MARCIAL PÉREZ, Appellant, v. REGISTRAR OF PROPERTY OF CAGUAS, Respondent.

No. 1129. Submitted November 2, 1943.—Decided January 13, 1944.

*Miranda y Miranda Esteve* for appellant. The registrar appeared by brief.

Mr. Acting Chief Justice Travieso delivered the opinion of the court.

José Vega Santiago, while he was married to Doña Amparo Rivera, by a public deed purchased from Antonia B. Santana a piece of real property which is described as follows:

"Urban, lot situated in the ward of Bairoa, Caguas, having a frontage of 16 meters on the south and a depth of 20 meters, bounded on the north by the principal tract from which it was segregated; on the south by street letter 'A'; on the east by street letter 'E'; and on the west by the principal tract. On this lot there is a zinc-roofed two-story concrete house."

After the deed of sale had been recorded in the Registry of Property of Caguas, the purchasing spouses were divorced by a judgment of the District Court of Humacao of April 17, 1942.

By deed No. 85 of July 30, 1943, executed in San Juan before Notary J. Pedro Miranda, José Vega Santiago and Doña Amparo Rivera sold said property to Marcial Pérez and his wife Doña Isabel Dávila, the purchasers retaining the sum of $1,263.50 for the cancellation of a mortgage which encumbered the property.

Upon the deed being presented for record in the Registry of Property of Caguas, the registrar refused to record the same by a decision of August 24, 1943, which reads as follows:

"Record is denied of the foregoing instrument, as it appears from the registry that the property sold forms a part of the estate belonging to the conjugal partnership constituted by José Vega Santiago and Amparo Rivera Jiménez; that said conjugal partnership was dissolved by a judgment of divorce rendered by the District Court of Humacao on April 17, 1942; that such dissolution carries with it the liquidation, partition, and award of the existing community property individually in favor of each spouse; and that since none of those requisites has been complied with, the aforesaid José Vega Santiago and Amparo Rivera Jiménez, after the dissolution of the conjugal partnership, can not dispose of the properties belonging to the same without a previous recording of the properties which may be awarded to them in payment of their respective one-half shares that may be acquired by them in accordance with the law, but may only alienate individually such property as may be allotted to them, all this in accordance with the provisions of §20 of the Mortgage Law; and a cautionary notice for 120 days has been entered in favor of the purchasers, at page 217 of volume 166 of Caguas, property 5174, Inscription 'A'."

The present appeal has been taken from that decision.

■■ The only question to be decided is whether, as a prerequisite for recording the deed of sale involved in this appeal, it is necessary to allot to the divorced spouses the portions belonging to them individually and to record said portions in their respective names.

Section 20 of the Mortgage Law provides that in order to permit the recording or entry of a deed conveying or encumbering the ownership or possession of real property or property rights, the interest of the person executing it or of the person in whose name the conveyance or encumbrance is made must first appear of record.

The property in question was acquired for a valuable consideration during the marriage by José Vega Santiago

and Amparo Rivera, and for that reason, in accordance with the provisions of §§1301 and 1307 of the Civil Code (1930 ed.), it is presumed that the same belongs to the conjugal partnership.

The conjugal partnership "is distinct from its members, an artificial person. When dissolved by the death of one of the partners, it must be liquidated, and the award made to the surviving spouse or partner also requires a new record in the registry." *Bird* v. *Registrar* (1935) 48 P.R.R. 675, 684. The same might be said regarding divorce cases. In such cases the partnership is also dissolved, which dissolution requires a new record in the registry as the main thing is the fact of the dissolution regardless of the grounds therefor.

This court in several of its decisions has declared that on the dissolution of the marriage bond each of the spouses becomes immediately entitled to an undivided one-half interest in all the existing community property. Applying that doctrine, in *Fabián* v. *Registrar of San Juan*, 25 P.R.R. 838, the registrar was ordered to record a contract whereby each of the former spouses renounced in favor of the other all his or her rights and interests in the conjugal partnership and agreed that any property recorded in the registry in the name of either spouse should be considered as belonging exclusively to the spouse in whose name the property was so recorded. In *Becerra* v. *Registrar of Guayama*, 27 P.R.R. 770, the registrar had refused to record a mortgage constituted by Becerra, surviving spouse, "as owner of an undivided one-half interest in certain real estate acquired during marriage," and the registrar was directed to make the record on the ground that "the property in question was already of record in the name of Becerra as community property." In *Allende* v. *Registrar of San Juan*, 28 P.R.R. 529, following the decision in *Becerra* v. *Registrar of Guayama, supra,* it was held that a property having been first recorded in the

registry as conjugal partnership property and afterwards in the name of the widower and children by reason of the death of the wife, a mortgage granted by the widower on his one-half of the community property is recordable, but subject to the result of a liquidation of the conjugal partnership. In the opinion rendered in that case it was said:

"But subsequent to the *Ríos, Paulo* and *Rossy Cases,* this court decided the cases of *Capó* v. *Fernández,* 27 P.R.R. 656, and *Santini et al.* v. *Díaz San Miguel et al.,* 127 P.R.R. 746, in which, while recognizing the true functions of the partition of the estate and the liquidation of the conjugal partnership, it also recognized the immediate effectiveness of the hereditary right and the dissolution of the partnership, thus adopting a liberal view which both guarantees all the rights involved and allows claims and compromises which otherwise would be difficult or impossible. This view necessarily forces us to modify our jurisprudence on the matter in relation to the registries of properties." *Allende* v. *Registrar of San Juan, supra,* p. 531.

In *Muñoz* v. *Registrar of Caguas,* 30 P.R.R. 68, following the same reasoning as in the cases of *Becerra* and *Allende, supra,* the court ordered the recording of a mortgage constituted by a widow on her undivided one-half interest in a **community** property, inasmuch as "the property in question was already recorded in the name of Rosario Carrión, presumably as community property because it was acquired for **a valuable consideration** during wedlock." Although the record of the mortgage was ordered, the court said:

"We insist that the better practice in this class of cases is to liquidate duly and clearly the conjugal partnership and then make the corresponding record in the registry. In this manner the rights of the interested persons are fixed in a more specific and definite manner and future confusion and complications are avoided." *Muñoz* v. *Registrar of Caguas, supra,* p. 69.

In *Maldonado* v. *Registrar,* 45 P.R.R. 816, "the better practice" recommended by the court in the *Muñoz* case, *supra,* had not been followed either, and the record was or-

dered of a conveyance made by a divorced wife of her undivided interest and rights in a certain parcel of land which had belonged to the conjugal partnership.

Manresa, in his commentaries on §1428 of the Spanish Civil Code, says that the legal rule is that upon the dissolution for any reason of the conjugal partnership, the powers held under it by the husband cease, and from that moment, the property which was acquired as community property does not belong either to the husband or to the wife, but to the dissolved partnership represented by all the parties interested in said property. And he adds that it can not be asserted that one half of that property belongs to the wife and the other half to the husband, for what belongs to each spouse is a one-half share in the profits, and the latter can not be known until the partnership has been liquidated. This rule, which undoubtedly is "the better practice," has been applied by the Supreme Court of Spain in the decisions cited by Manresa in his commentaries (vol. 9, pp. 734–737). However, that distinguished commentator, at page 737 of the cited volume, says:

"The law, then, does not contain an absolute prohibition against the alienation of the community property during the liquidation of the partnership; but in order to secure the rights of all the parties in interest, it requires that all the formalities prescribed in Section 1030, already commented on by us, must be complied with.

"The formality of a public auction is provided for in the absence of the unanimous consent of all the interested parties. The interested parties are the spouses or either of them who survives and the heirs of the other spouse, and the partnership creditors, if any, in so far as their rights are not duly secured by mortgage. Inasmuch as such creditors not always exist, when there are none, the consent of the known interested parties is sufficient, and such interested parties are always the widow or widower and the heirs of the deceased, after their capacity has been established. Moreover, in practice the acts of alienation or encumbrance of community property, in this situation, are admitted to record without any investigation as to whether or not any creditors exist, either because proof of such nega-

tive fact can not be required, or because it is considered that, in any event, the rights of the creditors against the partnership are protected."

As may be seen, in Spain the necessity of giving immediate effectiveness to the dissolution of the conjugal partnership has been recognized by permitting, as has been done in our Island, the recording of alienations or encumbrances of community property without requiring a previous liquidation of the conjugal partnership, provided that in the record made, it should be clearly set forth that the conjugal partnership which existed between the spouses in whose names the property appears recorded has not yet been liquidated, and that therefore the acquisition of the property, lien, or real right in the same is subject to the result of a liquidation to be subsequently made. We do not think that any serious objection can be made to the liberal attitude taken by this Supreme Court ever since its decision in *Allende* v. *Registrar of Property of San Juan, supra*. The legal situation of the creditor is really improved by the application of its rule. A creditor whose claim is not secured by an encumbrance upon the community property, has no protection against a *bona fide* transfer of their property made by the spouses during the existence of the conjugal partnership. By permitting the divorced spouses, or the surviving spouse, to convey or encumber the community property without a previous liquidation of the partnership, but with the condition that the conveyance or encumbrance shall be recorded subject to the reservations which we have already mentioned, the creditor is given a guarantee which he previously lacked, for such a creditor can then proceed against the property so recorded and will not be required to prove that the transfer was made without the existence of a just price or sufficient consideration.

For the reasons stated the decision appealed from is reversed and the respondent registrar is directed to make the

record sought, stating therein that, as no evidence has been presented showing that the conjugal partnership which existed between the spouses had been liquidated the record in the names of the purchasing spouses is made subject to the result of a liquidation of the aforesaid dissolved conjugal partnership.

Mr. Justice Snyder did not participate herein.